## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Curtis Bailey,

                Petitioner,

                         Case No. 19-cv-12656

v.

                         Judith E. Levy

Noah Nagy,                  United States District Judge

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [1], DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS

Petitioner Curtis Bailey filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his convictions for three counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a), and one count of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a), for the sexual assault of his brother's step-daughter, AC.[1] He raises six claims for relief.

---

[1] Because the victim is a minor, the Court will refer to her by her initials. *See* Fed. R. Civ. P. 5.2(a)(3).

The state courts' denial of these claims was not contrary to or an unreasonable application of Supreme Court precedent, and accordingly, the petition for habeas corpus is denied. The Court also denies a certificate of appealability and grants Petitioner leave to proceed *in forma pauperis* on appeal.

## I.   Background

The Michigan Court of Appeals provided this overview of the circumstances leading to Petitioner's conviction:

> At the time of trial, the complainant was 13 years old. In 2009 and 2010, when the complainant was 10 years old, she would sometimes stay with her stepfather's parents. Her stepfather was defendant's brother. Defendant had recently moved in with his parents after having lived in North Carolina for a number of years. The complainant alleged that she would pretend to be sleeping and defendant would come and pull down her pajama pants and underwear and touch her vagina. This happened on five or six occasions when she stayed at her grandmother's house. There was also an occasion when defendant stayed at the complainant's house on the night before a trip to Cedar Point. Defendant, who had been sleeping on the couch, came into complainant's bedroom, called his dog off the bed, and proceeded to touch the complainant again. Defendant also placed the complainant's hand on his penis and moved it up and down.

> In May 2010, the complainant left two notes for her health education teacher. In the notes, the complainant revealed that

her uncle had been touching her. Her parents were getting ready for an extended vacation and the complainant expressed fear at having to stay at her grandmother's house. The teacher reported the notes to Children's Protective Services, who ultimately referred the matter to the police. The complainant underwent a forensic interview at Weiss Advocacy Center. She also underwent two physical examinations at Hurley Medical Center and McLaren Regional Hospital. The complainant's hymen had a laceration that was compatible with sexual abuse.

*People v. Bailey*, No. 315992, 2014 WL 5364048, at *1 (Mich. Ct. App. Oct. 21, 2014).

Petitioner was convicted by a Genesee County Circuit Court jury and, on April 8, 2013, sentenced to 25 to 50 years for each first-degree criminal sexual conduct conviction, and 3 to 15 years for second-degree criminal sexual conduct, to be served concurrently. *See id.* at *1.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising the following claims: (i) there was insufficient evidence supporting the first-degree criminal sexual conduct convictions; (ii) the admission of Dr. Sankaran's out-of-court statement violated the Confrontation Clause; (iii) the trial counsel was ineffective for failing to object to admission of Dr. Sankaran's out-of-court statement; (iv) the victim's prior consistent statements were improperly admitted; and (v)

3

the prosecutor improperly appealed to the jury's sympathy. The Michigan Court of Appeals affirmed the convictions. *Id*. The Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Bailey*, 498 Mich. 865 (Mich. July 28, 2015).

In October 2015, Petitioner filed a motion for relief from judgment in the trial court raising eight claims: (i) the trial court engaged in judicial fact finding which increased the minimum sentence in violation of *Alleyne v. United States*, 570 U.S. 99 (2013); (ii) the presentence report contained inaccuracies and judicial factfinding improperly increased his sentencing guidelines range; (iii) defense counsel rendered ineffective assistance; (iv) insufficient evidence supported the convictions; (v) Petitioner's right of confrontation was violated by the admission of Dr. Sankaran's statement; (vi) the victim's rehabilitation evidence was improperly submitted to the jury; (vii) the prosecutor committed misconduct by appealing to the jurors' sympathy; and (viii) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court denied the motion for relief from judgment. *See* Op. & Order, *People v. Bailey*, No. 11-30007 (Genesee County Cir. Ct. Oct. 6, 2016) (ECF No. 7-14). The Michigan Court of Appeals denied Petitioner's application for

4

leave to appeal the trial court's decision. *People v. Bailey*, No. 337816 (Mich. Ct. App. Sept. 12, 2018). The Michigan Supreme Court also denied leave to appeal. *People v. Bailey*, 503 Mich. 857 (Mich. Sept. 12, 2018).

Petitioner then filed, through counsel, the instant petition for a writ of habeas corpus. The following claims are before the Court:

> I. There was insufficient evidence to convict Petitioner of first-degree criminal sexual conduct because there was insufficient evidence of penetration.

> II. Petitioner's right of confrontation was violated because a nurse and records keeper presented conclusions from a report of a doctor who did not testify.

> III. Petitioner was prejudiced by ineffective assistance of counsel because counsel failed to object to the admission of Dr. Sankaran's statement.

> IV. Petitioner was prejudiced by the prosecution's argument appealing to the jurors' sympathy and civic duty.

> V. Petitioner's due process rights were violated by judicial factfinding of an element that was never presented to the jury.

> VI. Petitioner was prejudiced by other instances of ineffective assistance of counsel.

Respondent filed an answer in opposition, arguing that several claims are procedurally defaulted and that all claims are meritless. (ECF No. 6.) Petitioner filed a reply brief. (ECF No. 10.)

## II. Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims previously adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Sufficiency of the Evidence (Claim I)

In his first claim, Petitioner asserts that the prosecution presented insufficient evidence to sustain his convictions for first-degree criminal sexual conduct because the element of penetration was not proven beyond a reasonable doubt. Petitioner maintains that the verdict was the result of impermissible inference stacking. Respondent argues that this claim is meritless.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, a sufficiency of the evidence challenge focuses on whether, "after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson,* 443 U.S. at 319). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.* In short, "deference should be given to the trier-of-fact's verdict, as contemplated

by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The *Jackson* standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. *Davis v. Lafler*, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, the elements of first-degree criminal sexual conduct, as charged in this case, are: (i) the defendant engaged in sexual penetration with another person and (ii) the other person was under 13 years of age. Mich. Comp. Laws § 750.520b(1). The statute defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." Mich. Comp. Laws. § 750.520a(r).

Applying the *Jackson* standard, the Michigan Court of Appeals denied relief on this claim. The court explained, in relevant part:

> Defendant argues that the complainant's testimony demonstrates that she was "unsure" regarding penetration. The following exchange took place at trial:
>
> > Q. [by the prosecutor] Okay. With what part of his body would he touch you with?

9

A. His fingers.

Q. Okay. And what part of your body would he touch?

A. My vagina.

Q. Okay. And would that be on top of your pajamas or under—on your skin?

A. Under, on my skin.

Q. Uh, would it be on top of your vagina or somewhere else?

A. I don't remember exactly.

Q. Okay. How did it feel to you?

A. I don't remember.

Q. Okay. Did you ever have any pain?

A. I don't remember.

Q. Did he ever put anything inside you?

A. Not that I can think of. I don't remember. It was like years ago. I don't remember it that well.

Q. What do you remember him doing with his fingers?

A. Feeling me.

Q. I'm sorry you have to go through this, but tell us how he would feel you with his fingers.

A. I don't really know how to explain it.

Q. Do the best you can. You're doing fine.

A. I don't know.

Q. Did you give a statement to investigators about this?

A. Yes.

Q. And did you describe the incident as fingering?

A. Yes.

The complainant testified that when she stayed the night at her grandmother's, defendant "would come in when he thought I was sleeping. He would pull down my pants and he would feel me ..." She pointed to a diagram of female genitalia to indicate where she had been touched. The complainant testified that defendant would "pull my pants down and he would feel me." When asked about her denial that defendant put anything inside her, the complainant clarified that she said defendant did not put anything other than his fingers inside her: "I only remember saying no to anything other than his fingers. I don't ever remember saying no to everything.

Although the complainant was apparently squeamish and hesitant to offer particulars of the assault at trial, there was evidence of penetration. The video recording of the complainant's June 8, 2010, forensic interview was played for the jury wherein the complainant clearly explained that defendant "stuck" his fingers inside her and moved his fingers "up and down." She knew his fingers were on the inside because she could feel it and sometimes it hurt. To the extent defendant argues that the complainant was not worthy of belief, this Court will not interfere with the jury's role in determining the weight of the evidence or the credibility of the witnesses. *People v. Wolfe*, 440 Mich. 508, 514-515; 489

11

N.W.2d 748, amended 441 Mich. 1201 (1992). Questions of credibility must be left to the trier of fact. *People v. Harrison*, 283 Mich. App. 374, 378; 768 N.W.2d 98 (2009).

Defendant also complains that the physical evidence of penetration was "inconclusive." However, in a prosecution under MCL 750.520b, the victim's testimony need not be corroborated with physical evidence. MCL 750.520h; *People v. Phelps*, 288 Mich. App 123, 133; 791 NW2d 732 (2010). Therefore, the complainant's statements during her forensic interview and her testimony at trial, standing alone, would have supported defendant's conviction. In addition, although defendant focuses on Dr. Gullekson's acknowledgement that the injury to the complainant's hymen may have been caused by something other than digital penetration, Gullekson made it clear that a lacerated hymen was not the result of normal activity. He testified that "it would have to be something that actually had a projection that would have made a forceful entry into that area that I would think could cause injury." The following exchange took place:

> Q. [by defense counsel] So all you can say that asked today is you just don't know?
>
> A. All I can say is there is something in the hymen which is compatible with injury, period; that's all I can say.
>
> Q. But you could also say it could be other things?
>
> A. Other things could have caused the injury?
>
> Q. Right.
>
> A. That's where the history is important.

The complainant's history, coupled with the irregular physical forensic examination, presented sufficient evidence for a jury to conclude that there was penetration.

*Bailey*, No. 315992, 2014 WL 5364048, at *2–3 (Mich. Ct. App. Oct. 21, 2014).

The Michigan Court of Appeals' decision was not contrary to, or an unreasonable application of, Supreme Court precedent. Petitioner maintains that the jury's verdict was based on illogical inferences and speculative conclusions. But a federal habeas court does "not reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).

Petitioner highlights testimony favorable to the defense to support his argument. But the *Jackson* standard requires evidence to be viewed in the light most favorable to the prosecution. So, for example, although, as Petitioner points out, AC told CPS investigator Amber Ragland that Petitioner had not put anything inside her and testified initially that she did not remember whether Petitioner placed anything inside of her, she also testified that she recalled telling Amber Ragland that Petitioner never put anything inside her "other than fingers." (ECF No. 7-6, PageID.480.) This was consistent with Nurse Clair's testimony, after reviewing her notes, that there was "digital penetration." (ECF No. 7-7,

PageID.579.) It was also consistent with Ragland's testimony that AC reported that Petitioner put "[h]is fingers inside of her and took them in and out." (ECF No. 7-6, PageID.425.)

Further Dr. Edwin Gullekson's testimony that there was a laceration to AC's hymen which "could be compatible" with sexual abuse likewise could reasonably support the jury's inference that the injury was caused by Petitioner. (ECF No. 7-7, PageID.563.) Dr. Gullekson acknowledged on cross-examination that the injury could have been caused by something other than sexual assault. (*Id.* at 563–64.) But Dr. Gullekson also testified that the many examples proposed by defense counsel, such as bike riding, motorcycle riding, horseback riding, playing soccer or basketball, or masturbation, could not have caused the injury absent an object penetrating that area during the activity. (*Id.* at PageID.564–66).

In *Murphy v. Phillips*, No. 20-4132, 2021 WL 1625400 (6th Cir. Mar. 17, 2021), the Sixth Circuit denied a certificate of appealability where the petitioner challenged the sufficiency of the evidence supporting his conviction for raping an eleven-month-old girl by penetrating her mouth with his penis. The petitioner argued that "there

was no eyewitness testimony, forensic evidence, physical evidence, or medical evidence presented at trial to support a finding that the eleven-month-old victim's mouth touched his penis, which is an element of the offense of rape (fellatio)." *Id.* at *1 (6th Cir. Mar. 17, 2021). A physician testified that the victim had injuries to her throat and mouth consistent with an object penetrating her mouth, but the physician did not know what object caused the injury. *Id.* This, the petitioner argued, was insufficient to allow the inference that his penis touched the victim. The Sixth Circuit held that, "[i]n light of all the evidence presented as well as the absence of any evidence that the victim's mouth and throat injuries could have been caused by any other object, the jury could reasonably infer that the victim's injuries were caused by [the petitioner's] penis being forcefully and repeatedly inserted into the victim's mouth." *Id.* at *3.

"*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (quoting *Jackson*, 443 U.S. at 319). Considering the evidence as a whole and in the light most favorable to

the prosecution, the jury's verdict was not "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. Habeas relief is denied on this claim.

## B. Right to Confrontation (Claim II)

In his second claim, Petitioner contends that his right of confrontation was violated when a medical report, which included findings by a non-testifying physician, was admitted into evidence and referenced by two witnesses, Wyntis Hall and Sheri Clair.

The Michigan Court of Appeals reviewed this claim for plain error because defense counsel did not object to the evidence in the trial court. *Bailey*, 2014 WL 5364048 at *3. The court found no plain error. *Id.*

Respondent argues that counsel's failure to make a contemporaneous objection at trial amounts to a procedural default, barring habeas review. It is unnecessary to address this procedural question. This issue is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d

16

212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). In this case, it is more efficient to proceed directly to the merits.

The Michigan Court of Appeals held that Petitioner's right of confrontation was not violated. The court of appeals noted that the medical records at issue were signed by Sexual Abuse Nurse Examiner Sheri Clair, who performed the physical examination with Dr. Sankaran. *Bailey*, 2014 WL 5364048, at *4. Clair testified at trial and was subject to cross-examination. Therefore, the state court concluded, Petitioner's "right to confront witnesses against him was never compromised." *Id.*

AEDPA deference applies to the court of appeals' plain-error analysis of this claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). Out-of-court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36 (2004). "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements." *Id.* at 59 n.9. The Confrontation Clause "does

17

not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.*

The record supports the state court's holding that the physical examination was performed jointly by Dr. Sankaran and Clair and that Clair signed the reports. Petitioner fails to show that the state court's decision that the opportunity to cross-examine Clair was sufficient to satisfy Petitioner's right of confrontation was contrary to, or an unreasonable application of, Supreme Court precedent.

Even assuming that the Court erred in admitting this evidence, "Confrontation Clause violations do not require automatic reversal, and are instead subject to harmless-error analysis." *Reiner v. Woods*, 955 F.3d 549, 555 (6th Cir. 2020).

The Michigan Court of Appeals held that, even if the evidence was improperly admitted, any error was harmless:

> Clair testified that Hurley's emergency room did not have a culpascope [*sic*] that would have been beneficial for the complainant's forensic examination. Clair further testified that at the time of the examination, she had not yet received training in pediatric assault. For those reasons, the complainant was referred to McLaren for a more thorough examination.

It was McLaren physician Dr. Gullekson who provided precise testimony regarding the forensic findings. He testified that the complainant's hymen had "an area of injury that is something that was irregular, which was approximately at eleven o'clock." The laceration was six or seven millimeters in length. There was increased redness. It indicated past injury and would probably be painful. Gullekson testified that "[d]igital penetration could have produced that injury" and that the injury was compatible with sexual abuse. On cross-examination, Gullekson acknowledged that the injury could have occurred as a result of something other than sexual assault. However, "it would have to be something that actually had a projection that would have made a forceful entry into that area that I would think could cause injury." Nevertheless, Gullekson "could not by looking at the patient decide how the injury occurred."

Defendant believes that Gullekson's testimony was favorable to defendant and that Sankaran's findings that the complainant's hymen was "missing," that she had a red and sore labia majora and that the vaginal vault was looser than she might have expected in an 11 year old, contradicted Gullekson's favorable testimony. But that is far from the case. Gullekson testified that the complainant's hymen was injured and that the injury was not the result of normal activity. Instead, the injury was one requiring forceful entry. Gullekson, not Dr. Sankaran, provided the most damning evidence regarding penetration. Therefore, defendant has failed to show that the outcome of trial would have been different had the evidence been excluded.

*Bailey*, 2014 WL 5364048, at *4.

19

A state court's decision that an error was harmless constitutes an adjudication "on the merits" to which the highly deferential AEDPA standard applies. *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022). Thus, this Court may not grant relief unless the state court's "'*harmlessness determination itself* was unreasonable.'" *Id.* (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)) (emphasis in *Fry*).

The clearly established law that applies here is *Chapman v. California*, 386 U.S. 18 (1967), which held that, for cases reviewed on direct appeal, a constitutional error is harmless if the state proves "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24. Petitioner must show that no "fairminded juris[t]" applying *Chapman* could reach the same conclusion as the Michigan Court of Appeals. *Davenport*, 142 S. Ct. at 1525 (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)). Petitioner fails to make such a showing.

Petitioner disagrees with the state court's assessment of the impact of the testimony on the defense, but this disagreement is insufficient to satisfy AEDPA's high standard. The state court reasonably concluded that Dr. Gullekson's testimony provided strong and damaging evidence

20

regarding penetration. That testimony coupled with AC's statements about penetration were sufficient to support the verdict beyond a reasonable doubt. The Court finds no basis to conclude that Michigan courts acted contrary to federal law or relied on an unreasonable determination of the facts. *See* 28 U.S.C. § 2244(d)(1), (2).

### D. Prosecutorial Misconduct (Claim IV)

Petitioner argues that the prosecutor improperly appealed to the sympathy in the jury during closing arguments.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To constitute a due process violation, a prosecutor's misconduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted).

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarborough v. Alvarado*, 541

21

U.S. 652, 664 (2004)) (alteration in original). "That leeway increases in assessing a state court's ruling under AEDPA," because the court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites ... other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017) (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

Petitioner argues that the prosecutor improperly appealed to the jury's sympathy by stating:

> Think this ten year old dropped these notes in the box knowing there's gonna be shockwaves at ten years old; she knew there was gonna be shockwaves when those—when these notes hit the box, okay. She's making all this up; no. She's gonna go through all this [sic] physical exams and have somebody prod on her genitals; making it up, no.
>
> * * *
>
> Even as reluctant as we saw her sitting here, she came forward and said what he did; the evidence has come back on him. Don't make her go through all this—don't make her go through all this all this, for nothing, please. Thank—thank you.

*Bailey*, 2014 WL 5364048, at *7.

The Michigan Court of Appeals held that the prosecutor's remarks were proper because "the prosecutor was not so much urging the jury to sympathize with the complainant as arguing the complainant was worthy of belief." *Id.* at *8. The prosecutor reasoned "it would be incredible for a 10-year-old child to subject herself to forensic physical examination and testifying at court if the allegations had been made up." *Id.*

A prosecutor, generally, should not "make statements calculated to incite the passion and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (internal quotations omitted). Here, the prosecutor did not ask the jurors to convict based upon sympathy they might feel for the victim. Instead, the prosecutor's arguments explored the victim's motive for coming forward to complain about the conduct and for testifying. The prosecutor did not imply any special knowledge about the witness's veracity. The argument was not improper. Relief is denied on this claim.

## C. Ineffective Assistance of Counsel (Claims III and VI)

Petitioner raises multiple ineffective assistance of counsel claims. Petitioner maintains that counsel was ineffective for failing to object to

the Dr. Sankaran-related testimony and exhibits. He also contends counsel was ineffective for failing to object to testimony from investigators Amber Ragland and Gayle Hartwell about things AC said during investigative interviews, and for failing to object to the admission of a recording of Hartwell's interview of AC. Finally, Petitioner claims that counsel was ineffective for failing to retain an expert witness.

### 1. *Strickland v. Washington*

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

### 2. Medical Records

Petitioner argues that counsel was ineffective for failing to object to the admission of medical records which contained the statements of a non-testifying physician. As discussed above, Petitioner failed to show that admission of the records violated his right of confrontation. Accordingly, he cannot show that counsel was ineffective for failing to object.

### 3. Testimony of Amber Ragland and Gayle Hartwell

Petitioner claims that counsel should have objected to the testimony of Amber Ragland, an investigator for the Department of Human Services, who testified about things AC told her during an interview. AC testified and was subject to cross-examination at trial. The Confrontation Clause, therefore, does not preclude the admission of her prior testimonial statements and counsel was not ineffective for failing to object. *Crawford*, 541 U.S. at 59 n.9.

Petitioner also maintains that counsel should have objected to the admission of the videotape of Hartwell's interview with AC. Petitioner fails to show a reasonable possibility that an objection to the videotape would have been sustained. Both Hartwell and AC testified at trial, so the Confrontation Clause was not implicated. Petitioner fails to assert an argument why this video was otherwise inadmissible under state law. Counsel, therefore, was not ineffective on this basis.

### 4. Expert Witness

Finally, Petitioner argues that counsel was ineffective for failing to retain an expert witness. Petitioner presents no evidence that an expert witness would have presented evidence favorable to the defense. A

habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial. *Id.* at 557 (6th Cir. 2007) (rejecting petitioner's ineffective-assistance claim arising from counsel's failure to call a particular witness because the petitioner "offered no evidence, beyond his assertions, to prove what the content of [the witness's] testimony would have been"). Relief on this claim is denied.

### E. Judicial Fact-Finding (Claim V)

Finally, Petitioner argues that the trial court impermissibly based his sentence on facts that were neither found by a jury nor admitted by Petitioner. The Sixth Amendment's guarantee of a trial by jury means that "[a]ny fact that, by law, increases the penalty for a crime ... must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013).

Michigan imposes a 25-year mandatory minimum sentence for first-degree criminal sexual conduct if the violation "is committed by an individual 17 years of age or older against an individual less than 13

years of age." Mich. Comp. Laws § 750.520(2)(b). The trial court did not instruct the jury that this charge required proof beyond a reasonable doubt that Petitioner was 17 years old or older at the time of the offense. The trial court, nevertheless, imposed the 25-year minimum sentence on the basis that Petitioner was 17 years of age or older. In so doing, the trial court violated Petitioner's constitutional right to have any fact which increases the mandatory minimum sentence submitted to the jury.

Under clearly established Supreme Court law, such errors are subject to harmless error analysis. *See United States v. Booker*, 543 U.S. 220, 268 (2005); *United States v. Soto*, 794 F.3d 635, 664 (6th Cir. 2015). For purposes of federal habeas review, a constitutional error is considered harmless if it did not have a "substantial and injurious effect or influence" in determining the outcome of the proceeding. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in the Sixth Circuit).

The error in this case was harmless. Petitioner did not contest the fact of his age at trial and his age was easily ascertainable. The criminal complaint, information and presentence investigation report (PSIR) all

contained Petitioner's birthdate and reflect that by the time he returned to Michigan from North Carolina and was charged with these offenses he was 18. During sentencing, Defense counsel did not object to Petitioner's birthdate as listed in the PSIR. Under Michigan law, a court can take judicial notice of a party's age. *See People v. McReynolds*, No. 307453, 2014 WL 860332, at *7 (Mich. Ct. App. Mar. 4, 2014). Because Petitioner's age is undisputed, the Court holds that the trial court's failure to specifically instruct the jury on this question did not have a "substantial and injurious effect" in determining the outcome of this proceeding. *Brecht*, 507 U.S. at 637.

## IV.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that

29

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

Reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability.

The Court grants Petitioner leave to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## V.   Order

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Petitioner may proceed on appeal *in forma pauperis.*

IT IS SO ORDERED.
Dated: February 10, 2023              s/Judith E. Levy
        Ann Arbor, Michigan          JUDITH E. LEVY
                                      United States District Judge

30

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 10, 2023.

<div style="margin-left: 40%;">
s/William Barkholz<br>
WILLIAM BARKHOLZ<br>
Case Manager
</div>